'Deering v. Parker.

# PRIVY COUNCIL.

## *APPEAL FROM NEW HAMPSHIRE.                     [xxiii.
### JULY 1760.

DEERING, appellant, v. PARKER, respondent.,(a)

*Tender.—Depreciation.*

A bond was given, payable 30th July 1735, "in good public bills of the Province of Massachusetts Bay, or current lawful money of New England, with interest;" many partial payments had been made in a depreciated currency, and indorsed at their nominal amounts ; in the year 1752, there had been a tender in bills of credit, current in New Hampshire; the province bills, contracted for, had been called in, and the currency of the country had gradually depreciated : *Held,* 1st. That the tender was not good, but that the partial payments ought to be allowed, according to the indorsements. 2d. That as to the balance due, the loss from the depreciated currency ought to be divided between the parties.

THIS was an appeal from New Hampshire, heard before a Committee of the Privy Council (Lord MANSFIELD being one of them), on the 10th of July 1760. The facts were these : One Parker had given a bond to Deering, payable the 30th of July 1735, conditioned for the payment of 2460l., "in good public bills of the province of Massachusetts Bay, or current lawful money of New England, with interest." There had been many payments made and indorsed. About the year 1752, the defendant tendered a large sum, in the bills of credit then current in New Hampshire, which the plaintiff refused, brought his action, and recovered judgment for the penalty in the bond, upon the verdict of a jury, in December 1758. After which, the cause was heard in the Chancery of New Hampshire, and the court decreed for the sum of 354l. 6s. 9d., in bills of credit of New Hampshire, new tenor, being

---

(a) This report is taken from a collection of manuscript cases, upon authority that appeared respectable when it was copied ; but the name of the reporter is forgotten

the nominal sum due at the time of the tender, deducting the sums paid and indorsed. So that the court went upon the principle, that the plaintiff should take the bills as tendered, and that the debtor was not bound to make good their depreciation, nor to pay in silver, or real money.

On the side of the *appellant*, or creditor, it was insisted, that the payment ought either to have been in bills of Massachusetts Bay (which, it seems, were all called in, and sunk, before the tender), or in silver money, agreeable to queen Anne's proclamation, *which, they insisted, was the true *xxiv.] meaning of that clause or part of the condition, to wit, current lawful money of New England. It was also claimed by him to have all the sums indorsed, reduced in nominal sums down to the value of silver at the time of giving the bond, to wit, 27s. per ounce.

On the side of the *respondent*, or debtor, it was urged, that current money of New England then meant, and was understood to be, indifferently, the bills of credit of any or either of the New England colonies, received in that colony in payments. That, therefore, the tender was in the specie contracted for, and that the sums indorsed were not only, of course, upon that supposition, equal to the sums expressed; but that the creditor, by indorsing, had agreed to and accepted of so much as the same expressed, in real as well as nominal sums.

The LORD PRESIDENT and LORD MANSFIELD expressed themselves fully in favor of the creditor's construction of the words, "current lawful money of New England;" to wit, that it did not mean bills of credit of any colony, but the words were put in contradistinction thereto. Lord MANSFIELD further added, that he was clear, on the one hand, that the sums indorsed ought to be allowed according to the nominal sums so indorsed, equal to the same sums of money mentioned in the bond, and that the plaintiff had no right to have the same any way reduced or altered. On the other hand, his lordship thought that the tender was not good in any respect; for not only because it was made in a species of currency, different from that contracted for; but also because it was out of time, being many years after the time of payment was lapsed, and also without notice. "What (said his lordship), shall a man meet his creditor in the street unawares, and tender a debt to him? The chancery allows six months' notice of time and place to be given. The law of the province enabling the court to turn itself into a court of equity, and to reduce the bond to the sum due by the *auditem*, was a very good thing; and what Sir Thomas Moore, in his time, labored so hard to obtain an act of parliament for here. And because the judges (with whom he had several conferences about the matter) were for retaining the old artificial way, he declared, that he would always grant injunctions in such cases. In the present case (his lordship continued), he was at no loss to determine, that the judgment ought to be reversed: but he was at a loss what rule to go by, in determining the *quantum* of the debt. Since the province bills contracted for were called in and gone; with a desire to know the usage, he had inquired of Mr. I., a New England gentleman (who had practised the law), and was informed, that " when old tenor had been contracted for, it had been allowed to be tendered, although depreciated in value, if the tender was *xxv.] made in season. That *towards the close of existence of old tenor, and after it had been called in and sunk, when judgment was given

for real money, this matter (of how much to give) was greatly agitated. Some were for giving the value of the old tenor, or bills contracted for, as it stood when the obligation was out, or the debt became due. Others would have it settled, as it was when at the last and worst period; and others again, were for taking a medium. But the more general method was, to take the value of the bills, when they should have been paid by the contract." Lord MANSFIELD observed, that from this information, he had received much light, and was relieved from his difficulty. That much might be said, for taking as a rule the value of the old tenor, at the time set by the bond for payment. That, upon the mention of it, it struck him as the rule of right in general : but that, in the present case, the bond had been outstanding so very long, the bills of credit, which were the currency of the country, had, in the meantime, sunk gradually, and became, in some measure, every one's loss : and that, therefore, in this case, he thought the loss ought to be divided between them.

THE BOARD, upon the whole, instead of taking the price of silver at the time of the contract, and time set for the payment (which was about 27s. per ounce), fixed it at 37s. per ounce, and computed the debt accordingly. This made about 100l. sterling in favor of the appellant, by which he got the opinion of the court in his favor ; but as no costs are allowed upon appeal, he could not be much a gainer by the general result.